IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

RASHAD M. RIDDICK,
*Pro se* Plaintiff,

v.                                          Civil No. 3:21cv623 (DJN)

BRANDI JUSTICE, *et al.*,
Defendants.

## MEMORANDUM OPINION
### (Dismissing Case)

This matter comes before the Court on *pro se* Plaintiff Rashad M. Riddick's ("Plaintiff")

proposed Complaint. (ECF No. 1.)  Plaintiff brings this action pursuant to 42 U.S.C. § 1983

against Brandi Justice, Rebecca A. Vauter, Allison Land, Jack Barber and Hughes Melton

(collectively, "Defendants"), alleging violations of Plaintiff's Fifth and Fourteenth Amendment

rights.  On October 5, 2021, the Court granted (ECF No. 2) Plaintiff's application to proceed *in*

*forma pauperis* ("IFP") (ECF No. 1-1) but found that Plaintiff failed to comply with Local Rule

83.1(M), requiring a ghostwriting form to be filed by *pro se* litigants with each filing, declaring

that he did not receive assistance in preparation of his complaint.  Plaintiff filed the ghostwriting

form on October 15, 2021, rendering Plaintiff's IFP Complaint now ripe for review.  (ECF No.

3.)

For the reasons set forth below, the Court hereby DISMISSES WITH PREJUDICE

Plaintiff's Complaint as to Defendants Vauter, Barber and Melton.  However, the Court hereby

DISMISSES WITHOUT PREJUDICE Plaintiff's Complaint as to Defendants Justice and Land, as well as his 2021 Seclusion claim, pursuant to 28 U.S.C. § 1915(e)(2)(B).[1]

## I.  BACKGROUND

### A.  Proposed Complaint

Plaintiff brings this action relating to his treatment at Central State Hospital ("Central State") against five defendants.  Brandi Justice presently serves as the acting Director of Central State.  (Compl. ¶ 5.)  Rebecca A. Vauter preceded Justice as the acting Director of Central State from August 2012 until October 2020.  (Compl. ¶ 6.)  Allison Land presently serves as the acting Commissioner for the Virginia Department of Behavioral Health and Developmental Services ("VDBHDS").  (Compl. ¶ 7.)  Hughes Melton preceded Land as the acting Commissioner of VDBHDS from July 2018 until his death in July 2019.  (Compl. ¶ 9.)  Finally, Jack Barber preceded Melton as the acting Commissioner of VDBHDS from October 2017 until July 2018.  (Compl. ¶ 8.)  Plaintiff sues all Defendants in their individual capacities.

In Count I, Plaintiff raises a Fourteenth Amendment procedural due process claim arising out of his detention in four-point restraints and two extended periods during which Central State housed him in isolation.[2]  In support, Plaintiff alleges that on January 20, 2018, at a time when he "had not in any way been a threat to himself or others," "Plaintiff was put into 4 point restraints by [Central State] security at the request and personal direction of Defendant Vauter."  (Compl.

---

[1]      "Because a § 1915 [(e)(2)(B)] dismissal is not a dismissal on the merits, but rather an exercise of the court's discretion under the *in forma pauperis* statute, the dismissal does not prejudice the filing of a paid complaint making the same allegations.  It could, however, have a *res judicata* effect on frivolousness determinations for future *in forma pauperis* petitions." *Denton v. Hernandez*, 504 U.S. 25, 34 (1992).

[2]      "4- point [sic] restraints are restrictive devices placed on an individual's legs, waist, and arms during emergencies whenever they become an imminent threat to themselves or others and which severely limits mobility in the individual." (Compl. ¶ 21.)

¶ 21.) Central State kept Plaintiff restrained for two weeks "without interruption" limiting his ability to sleep or "properly wash his body." (Compl. ¶¶ 22–23.) During such time, Plaintiff "had not been advised" of how long that he would remain in restraints, and he had no recourse to challenge his restraint. (Compl. ¶ 24.)

Additionally, Plaintiff complains of a nineteen-month seclusion period beginning on February 12, 2018. (Compl. ¶ 25.) In the course of this 582-day isolation, Plaintiff "was unable to participate in treatment groups . . . attend religious services . . . [or] participate in any social program." (Compl. ¶ 25.) Like his conditions of restraint, Plaintiff "had not been advised" of how long he would remain in isolation, and he had no recourse to challenge his housing. (Compl. ¶ 26.)

Plaintiff also alleges a second period of isolation commencing on March 3, 2021, that "has now exceeded 6 months" (the "2021 Seclusion"). (Compl. ¶ 31.) Since his seclusion, Plaintiff "has not received any psychiatric treatment." (Compl. ¶ 32.) Again, Plaintiff remains "without any process whatsoever that will have allowed Plaintiff to challenge his placement into solitary confinement, the expected duration or what if anything could be done to end his ordeal in solitary confinement." (Compl. ¶ 33.) As relief for the restraint and seclusion Fourteenth Amendment violations, Plaintiff seeks $2.5 million in punitive damages and injunctive relief related to his conditions of confinement. (Compl. ¶ 55.)

In Count II, Plaintiff alleges another Fourteenth Amendment procedural due process violation arising out of an inadequate grievance procedure (the "inadequate grievance procedure" claim).[3] In support, Plaintiff alleges that Defendant Vauter applied for a variance to a Local

_____

[3]     In both Counts, Plaintiff alleges that he "enjoys the Fifth Amendment right to Due Process of law, a right which is enforced against the states through the Fourteenth Amendment." (Compl. ¶¶ 36, 47.) To the extent that Plaintiff intends to raise Fifth Amendment claims, the

3

Human Rights Committee ("LHRC") hearing process, established per VDBHDS rule 12VAC35-115-180, alleging that Plaintiff, and those similarly housed individuals, "would be best protected by a process that is much quicker." (Compl. ¶¶ 13, 16.)  The variance "was somehow approved" in August 2015 without opportunity for patients to contest the change. (Compl. ¶ 17.)  The established variance instituted a "rubberstamping operation" without "any meaningful process to properly put issues before an objective committee." (Compl. ¶ 18.)  Plaintiff seeks an injunction reinstating the LHRC.  (Compl. ¶ 55.)

## B.    Plaintiff's Related Cases:  *Barber I* and *Barber II*

Plaintiff's claims are familiar to this Court.  On January 30, 2019, Plaintiff initiated a § 1983 action arising out of his treatment at Central State, suing Barber, Melton and Vauter among other defendants.  (Compl. ("*Barber I* Compl.") (ECF No. 1-1, *Riddick v. Barber, et al.*, 3:19cv71 ("*Barber I*")).)  In his first Amended Complaint in *Barber I*, Plaintiff complained that the staff placed him in four-point restraints on January 30, 2018, "at the behest" of Vauter and Barber. *Riddick v. Barber*, 2019 WL 6119715, at *2 (E.D. Va. Nov. 18, 2019), *appeal dismissed and remanded*, 822 F. App'x 200 (4th Cir. 2020).  Plaintiff alleged that he remained restrained until February 15, 2018, and during the intervening time period, suffered deprivation of services and treatment while his hygiene deteriorated. *Id.*  Upon release from the restraints, hospital staff

---

Court dismisses them as duplicative and inapposite, as it did in *Riddick v. Barber*, 2019 WL 6119715, at *7 (E.D. Va. Nov. 18, 2019), *appeal dismissed and remanded*, 822 F. App'x 200 (4th Cir. 2020) and *Riddick v. Barber*, 2021 WL 1651229, at *1 n.1 (E.D. Va. Apr. 27, 2021). *See Ingraham v. Wright*, 430 U.S. 651, 672–73 (1977) (explaining that the Fifth Amendment applies to the states through the Fourteenth Amendment); *Cosby v. City of Oakland*, 1997 WL 703776, at *5 (N.D. Ca. Oct. 28, 1997) ("[A]ny Fifth Amendment claim is merely duplicative of the Fourteenth Amendment claims and, thus, [should be] dismissed."); *Tate v. Smith*, 2017 WL 1843269, at *9 (M.D.N.C. May 5, 2017) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (explaining that the Fourteenth Amendment, rather than the Fifth Amendment, specifically governs the conduct of state officials)).

placed Plaintiff in the secluded housing ward, where he remained at the time of the filing of his

complaint. *Id.* On November 18, 2019, the Court dismissed without prejudice the Fourteenth

Amendment claims related to the underlying events, finding that Plaintiff's Amended Complaint

failed to state a claim on which relief could be granted. *Id.* at *1, *10.

Rather than file a new amended complaint, on December 3, 2019, Plaintiff filed his first

notice of appeal. (ECF No. 40, *Barber I*.) The Fourth Circuit remanded the case on September

22, 2020, on jurisdictional grounds, instructing the Court to allow Plaintiff to file an amended

complaint. *Riddick v. Barber*, 822 F. App'x 200, at *201 (4th Cir. Sept. 22, 2020) (noting the

dismissal without prejudice of the Fourteenth Amendment claims raised "questions about the

finality of the dismissal order").

While Plaintiff's first appeal awaited review by the Fourth Circuit, he initiated a new suit

on August 31, 2020, again suing Barber, Melton and Vauter. (Compl. ("*Barber II* Compl.")

(ECF No. 1-2, *Riddick v. Barber, et al.*, 3:20cv684 ("*Barber II*")).) In his *Barber II* Complaint,

Plaintiff essentially filed an amended version of the counts dismissed in *Barber I* without

prejudice. Plaintiff alleged violations of his Fourteenth Amendment rights due to his detention

in four-point restraints and extended seclusion, and added a claim for an inadequate grievance

procedure pertaining to these two events. (*Barber II* Compl. ¶¶ 9–18.)

On remand of *Barber I*, the Court consolidated the two *Barber* actions and indicated that

Plaintiff could file an amended complaint within twenty-one days; otherwise, the Court would

deem the *Barber II* complaint the operative complaint. (ECF No. 46, *Barber I*.) Plaintiff elected

to file an amended complaint (Second Am. Compl. (ECF No. 47, *Barber I*)) — becoming the

fifth complaint in the case — in which he dropped his claims regarding the inadequate grievance procedure that he alleged in *Barber II*.[4]

On April 27, 2021, the Court found that Plaintiff's Second Amended Complaint failed to state a claim on which relief could be granted. *Riddick v. Barber*, 2021 WL 1651229, at *6 (E.D. Va. Apr. 27, 2021). This time, the Court dismissed the case with prejudice, citing the numerous opportunities that the Court had given Plaintiff to cure the deficiencies in his complaint. *Id.* Subsequently, on May 12, 2021, Plaintiff filed his second notice of appeal to the Fourth Circuit, where the case now awaits review. (ECF No. 56, *Barber I*.) Plaintiff then executed an identical litigation strategy to that of *Barber II*: On September 29, 2021, while Plaintiff's second appeal of *Barber I* remained pending before the Fourth Circuit, Plaintiff initiated this new lawsuit alleging substantially the same claims, which the Court now reviews.

## II.  FRIVOLITY REVIEW

### A.  Standard of Review

Congress enacted the federal IFP statute, in part, not only to help indigent litigants have meaningful access to the federal courts, but also to help district courts avoid the burden of baseless litigation, the cost of which the public bears. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). Per that statute, district courts have the authority to review and dismiss a complaint prior to filing or any time thereafter. *See* 28 U.S.C. § 1915(e)(2) (giving the court authority to "dismiss the case at any time"); *Neitzke*, 490 U.S. at 324 (stating that courts often dismiss cases under § 1915 "*sua sponte* . . . to spare prospective defendants the inconvenience and expense of

---

[4]     Although the Court titled the amended complaint that Plaintiff filed after remand the "Second Amended Complaint," Plaintiff had already filed four other complaints in this case. (*See* ECF Nos. 1-1, 5, 6, 47, *Barber I*; ECF No. 1-2, *Barber II* (consolidated into *Barber I* on October 15, 2020 (ECF No. 46, *Barber I*).)

6

answering complaints"). Indeed, the statute mandates that the court "shall dismiss the case at any time" if it makes a determination that:

> (A) the allegation of poverty is untrue; or
>
> (B) the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

Of course, the Court affords *pro se* complaints a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 (4th Cir. 2006). However, the Court need not attempt "to discern the unexpressed interest of the plaintiff." *Id.* Nor does the requirement of liberal construction excuse a clear failure in the pleading to allege a federally cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990) (affirming dismissal of certain claims brought by *pro se* plaintiff despite liberal construction). As explained by the Fourth Circuit, "[t]hough [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985). Even with this liberal construction, the Court finds that it must dismiss Plaintiff's Complaint for failing to state a claim.

### B.    Analysis

Plaintiff's Complaint fails to state a claim, because (1) the doctrine of *res judicata* bars his claims against Barber, Vauter and Melton, and (2) it fails to allege Justice and Land's personal involvement in Plaintiff's deprivation of rights.

7

### *1.* **Res Judicata** *Bars Plaintiff's Claims Against Barber, Vauter and Melton.*

"Under the doctrine of *res judicata*, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); then citing *Brown v. Felsen*, 442 U.S. 127, 131 (1979); and then citing *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991)). "By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, 'res judicata . . . encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.'" *Id.* (quoting *Brown*, 442 U.S. at 131).

The doctrine of *res judicata* bars subsequent litigation if three elements are present: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Id.* at 354–55 (4th Cir. 2004) (citing *Nash Cnty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981)). Additionally, the court should consider "whether the party or its privy knew or should have known of its claims at the time of the first action." *Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016) (citing *Grausz v. Englander*, 321 F.3d 467, 473–74 (4th Cir. 2003).

Here, the Court's Order in *Barber I*, dated April 27, 2021, dismissing Plaintiff's Second Amended Complaint with prejudice satisfies the first element. (ECF No. 55, *Barber I.*) The Court's Order constituted a final judgment, because it completely disposed of Plaintiff's case, and nothing else remained for the Court to do in the matter. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978). Further, the Court evaluated Plaintiff's claims "on the merits" in applying

8

the relevant law to the facts alleged.  Pursuant to Federal Rule of Civil Procedure 58 and 79(a), the Court's final judgment became effective when entered into the civil docket on April 27, 2021.  Although that case currently awaits review by the Fourth Circuit, "until and unless reversed," Plaintiff's appeal does not undermine or "detract from [the judgment's] decisiveness and finality." *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189 (1941).

As to the second element, to evaluate whether an "identity of the cause of action" exists in both suits, the Court must determine "whether the claim presented in the new litigation 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'" *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999) (quoting *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986); and then citing *Restatement (Second) of Judgments* § 24 (1982)).

In *Barber I*, Plaintiff raised two counts of Fourteenth Amendment procedural due process violations, citing to 12VAC35-115-110, a state administrative code provision. *Riddick v. Barber*, 2021 WL 1651229, at *2–3 (E.D. Va. Apr. 27, 2021).  Plaintiff's claims arose from Central State staff placing him in four-point restraints for two weeks and housing him in an isolation ward for 577 days. *Id.*  In this case, Plaintiff restyles those two counts as one Fourteenth Amendment procedural due process violation, again citing 12VAC35-115-110. (Compl. ¶¶ 35–44.)  Plaintiff overtly relies upon the same series of transactions, alleging Central State security detained him in four-point restraints for two weeks and isolated him in a vacant psychiatric ward for nineteen months, which he recalculates as 582 days.  (Compl. ¶¶ 21–26.)[5]

---

[5]     In his proposed Complaint also under Count I, Plaintiff does allege a second stint of isolation beginning on March 3, 2021, that he did not raise in *Barber I*.  (Compl. ¶¶ 31–33.) Accordingly, the doctrine of *res judicata* does not bar Plaintiff's Fourteenth Amendment claim as to this specific occurrence.  However, as discussed below, Plaintiff fails to allege personal involvement by any Defendant in this alleged deprivation of rights.

Plaintiff then proceeds to raise a new Count II in which he alleges that the Central State's inadequate grievance procedure deprived him of his Fourteenth Amendment procedural due process rights, citing to 12VAC35-115-180. (Compl. ¶¶ 45–51.) Specifically, Plaintiff alleges that when he raised an official complaint with Central State regarding his detention in four-point restraints, Vauter denied his request for relief, citing an official exemption to the general Local Human Rights Committee review process. (Compl. ¶¶ 27–30.) Plaintiff describes the exemption to the complaint review process as a mere "rubberstamping operation." (Compl. ¶ 18.)

Although Plaintiff's inadequate grievance procedure claim did not appear in the *Barber I* Second Amended Complaint, *res judicata* bars the claim, because it should have appeared therein. The Fourth Circuit follows the "transaction approach" to identity of claims, meaning that *res judicata* "will bar a 'newly articulated claim[]' if it is based on the same underlying transaction [involved in the first suit] and could have been brought in the earlier action." *Providence Hall*, 816 F.3d at 282 (quoting *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013)). Here, the inadequate grievance procedure claim arises out of the same nucleus of facts as the *Barber I* Fourteenth Amendment claims: Plaintiff's detention in four-point restraints and placement in an isolation ward. Accordingly, the Court finds an "identity of the cause of action" exists and Plaintiff should have raised his inadequate grievance procedure claim in *Barber I*.

Moreover, Plaintiff knew of his inadequate grievance procedure claim at the time that he filed his Second Amended Complaint. *See Providence Hall*, 816 F.3d at 276 (describing then-existing knowledge of claim as the first practical consideration of *res judicata*). While Plaintiff's first appeal of *Barber I* awaited review, on August 31, 2020, Plaintiff filed another action raising the very same claims that he raises in this proposed Complaint — including the inadequate

grievance procedure claim. (Compl. ¶¶ 15–18 (ECF No. 1-2, *Barber II*).) On remand, the Court

consolidated the two *Barber* actions and indicated that the Court would deem the Complaint filed

in the second action as the operative complaint if Plaintiff failed to file an amended complaint

within twenty-one days. (ECF No. 46, *Barber I*.) Plaintiff elected to file an amended complaint

(Second Am. Compl. (ECF No. 47 *Barber I*)) — actually the fifth complaint in the case — in

which he dropped his claims regarding the inadequate grievance procedure that he alleged in

*Barber II.* Clearly, Plaintiff knew of his inadequate grievance procedure claims at the time and

could — indeed, should — have brought it then.

Finally, Plaintiff's claims satisfy the third element of "identity of parties." In both

*Barber I* and this case, Plaintiff sued Barber, Vauter and Melton.[6] Accordingly, *res judicata* bars

Plaintiff's claims against Barber, Vauter and Melton.

### 2.    *Plaintiff Fails to Allege Personal Involvement of Justice and Lands.*

To state a cognizable claim under § 1983, Plaintiff must allege facts in his complaint to

show that he was "deprived of rights guaranteed by the Constitution or the laws of the United

States and that this deprivation resulted from conduct committed by a person acting under color

of state law." *Turner v. Herrick*, 2011 WL 3320820, at \*3 (E.D. Va. July 29, 2011) (citing *West

v. Atkins*, 487 U.S. 42 (1988)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–93

---

[6]    Although Justice and Land succeeded to the offices once occupied by Barber, Vauter and Melton, *res judicata* does not apply to them, because Plaintiff has sued Defendants in their individual capacities. *See Andrews v. Daw*, 201 F.3d 521, 526 (4th Cir. 2000) ("[A] government official in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata."); 18 James Wm. Moore et al., *Moore's Federal Practice - Civil* § 131.40 (2021) ("A government official sued in his or her personal capacity is not considered in privity with the government. Thus, such an official will neither be subject to nor benefit from the preclusive effect of a prior judgment against the government.") (citing *Gray v. Lacke*, 885 F.2d 399, 404–06 (7th Cir. 1989); *Conner v. Reinhard*, 847 F.2d 384, 395 (7th Cir. 1988); *Willner v. Budig*, 848 F.2d 1032, 1034 & n.2 (10th Cir. 1988)).

(1978) (explaining that a plaintiff must demonstrate that a defendant personally participated in the alleged constitutional violation.)  Indeed, the Supreme Court has held that a plaintiff must show personal participation and, further, that the concept of respondeat superior does not exist for claims brought pursuant to § 1983.  *Id.*; *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." (emphasis added)).

Here, the Court finds first that Plaintiff has failed to allege facts sufficient to show that Defendants Justice and Land have personally deprived Plaintiff of rights secured to him by the Fourteenth Amendment.[7]  Indeed, the proposed Complaint fails to allege any facts that tend to demonstrate personal participation by Justice and Land in a constitutional violation, as § 1983 requires.

Specifically, although Plaintiff has put forth factual and legal conclusions, he has failed to allege facts that demonstrate that Justice or Land personally participated in the alleged Fourteenth Amendment violations of Count I.  Instead, Plaintiff conclusively alleges that Justice and Land "either sought, approved, or implemented a measure that precluded Plaintiff Riddick from receiving the protections" against solitary confinement and four-point restraints.  (Compl. ¶ 39.)  The VDBHDS Rules provide for these protections, which "Justice and Land were . . . aware and fully comprise [sic] of." (Compl. ¶¶ 37–38.)  Plaintiff proceeds to state "Justice and Land . . . personally participated in the implementation of plaintiffs two separate stretches of isolation" and that they "deliberately deviated [from the seclusion and restraint] policies with the

_____

[7]    At this point, the Court conducts an analysis almost identical to its dismissal of Defendants Barber and Melton in *Barber I*. 2021 WL 1651229, at *4–5 (E.D. Va. Apr. 27, 2021).  While Plaintiff has identified two new Defendants to sue, his conclusory factual and legal allegations remain the same.

12

intent to cause Plaintiff harm." (Compl. ¶¶ 40, 43.)  As to Count II, Plaintiff's inadequate grievance procedure claim fails to mention Justice and Land entirely, let alone allege any facts demonstrating their personal involvement.  (Compl. ¶¶ 45–51.)

Second, with regard to the new 2021 Seclusion claim, the Court finds that Plaintiff has failed to allege facts sufficient to show that *any* Defendants personally deprived Plaintiff of rights secured to him by the Fourteenth Amendment.  Indeed, Plaintiff fails to attribute his 2021 Seclusion to anyone, merely stating that "[o]n March 3, 2021 Plaintiff was again transported from the general population area of Central State to a separate vacant psychiatric ward by himself where he was to remain." (Compl. ¶ 31.)  The Complaint's conclusory allegation that the Defendants "personally participated in the implementation of plaintiff's two separate stretches of isolation" constitutes the only other reference to the 2021 Seclusion.  (Compl. ¶ 40.)  Further, according to the Complaint, Barber, Vauter and Melton no longer worked for Central State or VDBHDS at the time of the alleged incident in 2021 and thereby could not have acted under color of state law at that time to deprive Plaintiff of his rights.  (Compl. ¶¶ 6, 8–9.)  Only Justice and Land could have done so, because they alone served in their respective Director and Commissioner capacities at that time.  (Compl. ¶¶ 5, 7.)  However, as discussed above, the Complaint fails to allege any facts supporting personal involvement by Justice and Land in constitutional violations against Plaintiff.

Because Plaintiff proceeds *pro se*, the Court may construe Plaintiff's complaint liberally; however, "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 183 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).  Here, with regard to Justice and Land and the 2021 Seclusion, Plaintiff fails to support his "naked

13

assertions of wrongdoing" with any "factual enhancement" that allow his claims to reach the threshold of plausibility. *Id.* Because Plaintiff has failed to allege sufficient facts to demonstrate any personal participation in the alleged Fourteenth Amendment violations by Justice or Land or by any Defendant as to the 2021 Seclusion, the Court finds that Plaintiff has failed to state Fourteenth Amendment claims upon which relief can be granted pursuant to § 1983.

### III.   CONCLUSION

For the reasons stated above, pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court hereby DISMISSES WITHOUT PREJUDICE Plaintiff's Complaint as to Defendants Justice and Land and the 2021 Seclusion claim. The Court hereby DISMISSES WITH PREJUDICE Plaintiff's Complaint as to Defendants Vauter, Barber and Melton. An appropriate Order shall issue.

This case is now CLOSED.

Let the Clerk file a copy of this Memorandum Order electronically, notify all counsel of record and forward a copy to Plaintiff at his address of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date: November 15, 2021